Carr, J.
The principles which govern awards, have been so often, and so solemnly settled by this court, that it would be an idle waste of time to state them again, or to cite the authorities on which they rest. If there be any thing settled in the law, it seems to be this, that to set aside an award, you must shew either a mistake apparent upon its face, or misbehaviour in the arbitrators. The court may be fully satisfied that the award has operated injustice, yet if the mistake be not upon its face, and there be no proof of partiality or corruption, it will not touch it. Whether these rules are wise or not, whether this domestic forum is to be cherished or discouraged, will hardly (I presume) at this day, be considered open questions.
That there is no mistake apparent upon the face of the award, seemed to be admitted, and must, I think, be taken as a clear point.
The first bill states, that Patillo employed Lee to do some carpenter’s work; and after the work was finished, considering his bills unreasonably high, he refused to pay them ; whereupon, they agreed to submit the prices of the work to the decision of Degraffenreidt and Tisdale, or their umpire: that the arbitrators confined themselves to price, taking Lee’s bills for amount of work: that when Patillo received the award, he told Lee he believed he had charged more work than was done; that Lee promised to have an accurate calculation of the work and materials made, and that, in this respect, the award was not to be considered binding and conclusive; and that, upon this agreement, he executed his bond to Lee for 720 dollars, the balance due according to the award : that Lee afterwards, refused all measurement or correction, sued him on the bond, and obtained judgement. If Patillo could have established, either by the answer or by other proof, the agreement, on which *444 he states that his bond was executed, he would have taken the case off the ground of the award, so far as regarded the amount of work and materials, and would clearly have had a right to the remeasurernent and calculation agreed on. But in this respect, he has failed. The answer is certainly no admission: Lee there says that the bond was not executed upon the terms mentioned in the bill; but on the contrary Patillo proposed to give his bond, about which he felt indifferent, as he had his bills and the arbitration, but at the request of Patillo, he received a bond, as a full and complete settlement, and gave up all his bills and the award; which he would not have given up, if he had considered the matter as still unsettled. He adds, that after the bond was executed, Patillo said, jestingly, that he would be glad, for his own satisfaction, to have the work accurately measured; and Lee replied he might do so, if he could ; but he never promised to do it himself, nor did he intimate, before or after the .execution of the bond, that he would unsettle the award or bond again. I think this a positive denial, and being responsive, must be disproved. Is there any evidence that disproves it? Clearly not, in my mind. No witness is produced who was present at the execution of the bond, when Patillo says the agreement to remeasure was made; yet there is a witness to the bond,—a female. If Patillo really disputed the correctness of Lee’s bill as to amount of work, is it not strange, that he should, in the first place, have permitted the arbitrators to take it as the basis of their award, and then when he found the award made, and the sum ascertained upon that basis, should have executed his bond for the balance, without one scrip of writing, or any witness to prove a verbal understanding, that he was still to have a right to unsettle ‘every thing that was done ? to destroy the very foundation of the award ? The only witness who gives evidence touching this point at all, is Thomas Lee: he speaks of a conversation between the parties after the .suit at law was brought; and taking his two affidavits together (if I do not misunderstand them, for, the last espe *445 cially is very ambiguously expressed) they only amount to this, that he heard a conversation between the parties, in which Patillo claimed, that he had required a remeasurement when he executed his bond, and that Lee had said he was willing to do what was right, but did not think a re-measurement right. This, if it were proved by more than one witness, would not amount to any thing like an agreement ; but being a single witness against the bond, executed unconditionally, and Lee’s positive answer, is of no weight.
The ground, then, upon which the first bill was filed, was wholly unsupported ; and the injunction ought to have been dissolved, on the motion made in the county court, and the bill dismissed ; but the court being divided, the motion was overruled. This was in June 1821. The case then stood upon an order to take depositions till February 1822, when it was set for hearing by the plaintiff. So it remained till June 1824, when upon the plaintiff’s motion, leave was given him to file an amended bill: a permission, which in my judgement, ought never to have been granted under the circumstances of the case, and after the great lapse of time which had taken place.
The new bill charges the arbitrators and their umpire with corruption. The grounds of this charge, as they may be collected from the bill are, 1. that the arbitrators took the bills of Lee as to the amount of work and materials, without examining those points themselves; and 2. that they allowed 8s. 6d. per hundred for hewing and sawing, although their own prices for the same work, were only 6s. and Is. 6d. These, I believe, are the material points. No evidence is gone into, to prove from the words or the temper of the arbitrators, partiality or corruption ; it is rested on their acts as stated above. We must recollect that mere mistake cannot be established by evidence. Do the acts complained of, amount to partiality or corruption ?
1. As to taking Lee’s bill Degrajfenreidt says, that when he met first on the business, Patillo expressed a wish that the bills should be examined as to quantity of materials and *446 work; but as he declined doing so, and understood that Tisdale also had declined such examination, he considered the prices alone submitted to their arbitration, and accordingly they acted on the prices only. Tisdale, in his first affidavit, says he viewed the work at the request of both parties; that he did consider the calculation of the work and materials as a part of their business; but that Lee furnished a bill, which was not disputed by Patiilo. In his second affidavit, he says, he asked Patiilo, whether he disputed the quality or quantity of the work; he said he did not, but that he merely called on them, because he was not a judge; that he might view the work then, and Degraffenreidt might view it at another time; and when they met, if they disagreed, they might call on a third person. Now, when he said that he did not dispute the quantity or quality of the work, but called on them because he was not a judge, what was it he called on them for ? Let his original bill sworn to in open court, answer : that states, that believing Lee’s bills unreasonably high, he refused to pay them, and he and Lee agreed to submit the prices of the work, to Degraffenreidt and Tisdale. But whatever might have been his original wish, it is clear, that he knew the arbitrators were about to make their award without any measurement or calculation of quantity, and to take Lee’s bills as their basis, and that he acquiesced in this proceeding. Degraffenreidt expressly declined such examination ; Tisdale considered Lee’s bill admitted : Patiilo knew these things, and then was his time, to have insisted on the measurement and calculation, if he continued to think them material; but so far from this, it is evident, that in his conversation with Tisdale, he counted on the award being made without them; for he tells him, he might view (not measure and calculate) the work then, and Degraffenreidt might view it ■ at another time, and when they met, if they disagreed, they might call in an umpire. The arbitrators considered their award a final settlement; which could only be upon the ground, that the bill of Lee was admitted ; since a subsequent measurement and calculation must remove the *447 very basis of tlieir work, and throw every thing again up into the wind. But more than all this, when the award was made, and presented to Patillo, ho went into a settlement upon it, received a credit for all his payments, executed his bond unconditionally for the balance, and it is not till upwards of two years after, when pressed by a judgement on the bond, that he calls in question by his bill any part of the transaction. Under these circumstances, it surely cannot be imputed to the arbitrators as proof of partiality or corruption, that they took Lee’s bills as to quantity of work and materials.
2. The other charge of misbehaviour is, that although the price of Degrajfenreidt for hewing and sawing was 6s. per hundred, and that of Tisdale 7s. 6d., yet these arbitrators allowed Lee 8s. 6d.; and if this award had been made by these two men, this would have been, to say the least of it, a strange and suspicious fact. But we are told, on all hands, that if they differed, they were to choose an umpire; they did' disagree, and then called on Parrotte. I need not say, that when arbitrators disagree and call in an umpire, the award is in law his, though they may sign it with him. Nor is he, in his decision on any point, bound to agree with either arbitrators, or to split the difference between them : he must be guided by his own judgement, free of all control; and, in the absence of all testimony, we must suppose he was so, in fixing this price for hewing and sawing. This then is no ground for fastening upon the arbitrators or the umpire, the charge of corruption.
But it was said, if these arbitrators had no agency in settling the amount of work and materials, it is no part of their award, and has nothing of the sanctity belonging to awards. I consider Lee’s bills as the statement of the subject matter, on which the arbitrators were to act; as if the parties had said, here are bills of certain work done and materials found; we cannot agree as to the prices; you must judge between us in fixing them. The bills become thus the very foundation of the award.
*448 But suppose there were no award here at all; suppose that when Lee presented his bills to Patillo, he had examined them for himself, or got some friend better acquainted with the subject, to do it; and that, after such examination, he had settled with Lee, got all his credits, and executed his bond for the balance; and after a judgement on the bond, had attempted to open the whole account from its foundation, and had shewn such a case as is now before us: I, for one, would have refused to open the transaction. Look at the nature of it: no previous bargain is made settling any of the terms: the carpenter goes to work, finds all and does all; the work is finished; and the bill presented, containing a hundred different items,—timbers, wagonage, hewing and sawing, finding, measurement, prices, &c. &c. All is settled, the bills given up, and bond taken; and some six or eight years afterwards, all this is to be ripped up ! How can you settle it then ? The carpenters tell us, that there is no such thing as ascertaining with any thing like accuracy, the quantity of timbers which have been used in a building. Look at the measurement made by Hannah and Perry, at the instance of Patillo, and without notice to Lee. The persons who made that, tell us, that if they had measured side and edge, there would have been no material difference between their bill and Lee’s; and many witnesses tell us, that this was the usual mode at the time the work was done.
It was relied on, that the commissioners who acted under the order of the superiour court of chancery, were appointed by consent of the parties by their counsel. I do not consider this as going, in the slightest degree, to shew the assent of Lee to open the transaction, or abandon the ground he occupied under the award. He moved to dissolve the injunction ; this motion was overruled; and all done after-wards, was in invitum. Before these commissioners, he protested against their proceeding, and claimed to hold to the award. Look at the testimony as to the wagonage on which the commissioners seem to have rested their report, as to this matter: can any one read the depositions of En *449 daly, and give them much credit? Will they not see, that when asked the same questions, by the different parties, he answers them differently ?
Upon the whole, I must believe, that to open such a transaction as this, on such ground, will be contrary to the whole current of authority, and fraught with very mischievous consequences. Look at the monstrous result here. The party who had a judgement at law on the bond of the other for 770 dollars with interest and costs, is called into equity, to injoin his judgement; the bill seeks nothing more; yet by this process of resettlement, a balance is produced against him, and a decree entered, not merely to injoin his judgement perpetually, but, in addition, that he pay to the man for whom he built the houses, 300 dollars with interest and costs. I cannot agree to this. I think the decree should be reversed, the injunction dissolved, and the bill dismissed.
Cabell, J. It is manifest that great injustice was done Patiilo by the award of the arbitrators; and I think, this injustice may be remedied without the violation of any established principle. I do not say, that these arbitrators were corrupt; but they have reposed a confidence in the unproved representations and statements of one of the parties to the submission, which, to say the least of it, amounts to misbehaviour, if not to partiality.
The language of the bill is so defective in precision, that if we were to look to that alone, we might, perhaps, be somewhat in doubt as to the extent of the submission; whether it embraced the quantity, as well as the prices, of the work. But when we look to the conduct of the parties, and to the evidence in the cause, there can be no doubt, but that the whole subject of the work was referred ; quantity, quality and prices. Lee expressly swears it in his answer; for he says, that it was not true that the reference was confined to the prices, but it was for the purpose of settling the whole matter in dispute relative to the said work &c. Tisdale, one of the arbitrators, says, that at the first meeting of *450 the parties (the other arbitrator not being present) he asked Patillo, whether he disputed the quality or quantity of the work; he said he did not, but that he merely called on them because he was not a judge of it himself. SureJy this, did not mean, that he acquiesced in Lee’s bills in these respects. If that were the case, why call on them at all ? Not knowing w’hether the bills were right or wrong, he could not, as an honest man, dispute it; but left it for them to decide. Degrajfenreidt, the other arbitrator, says, that when be first met the parties, Patillo requested, that the calculation of the quantity of materials and work should be made, and'expressed his opinion that considerable error existed in this respect. Now, let us see what was the conduct of the arbitrators. It is admitted, that they made no inquiry into, nor any estimate of, the quantity of materials or of work, but were guided intirely by Lee’s bills. Tisdale says, he did not make any calculation, because Patillo did not dispute the bills in these respects. I have shewn already that he did not admit them. It was, consequently, the duly of the arbitrators to make the necessary inquiries to satisfy themselves of their justice, Degrajfenreidt repeats in his second deposition, what he had said in the first, as to Patillo’s anxiety on this subject; that he observed, that he thought Lee’s bills were very high, and especially the hewing and sawing appeared to him to be enormous; and that he expressed a wish that the arbitrators should majke some calculation to see whether it was correct in these respects. It is worthy of remark, that these objections, made in the presence of the arbitrators, related only to quantities of work and materials; for Lee’s bills as submitted to them contained no prices; yet the arbitrators made no estimate of quantities whatever. I have given the reason assigned by one of them for this omission. Then let us hear the other: Degrajfenreidt, after relating Patillo’s anxiety for them to make the calculation, says, that not doubting the correctness of Lee, they did not enter into a calculation of any part of the work done for Patillo. And as to the umpire, he never saw the work at all. I cannot sanction an award thus made.
*451 Nor do I think the bond given by Patillo precludes him from seeking redress in equity. He says in his bill, that at the time the bond was given, there was an agreement that there should be a rerneasurement of the work. Lee professes to deny this ; but I do not believe him. His answer appears to me to be an equivocation. In another part of his answer, he has stated what is certainly false; for he says that the arbitrators went to the house, viewed the work and compared it with his bill; in which last particular, he is contradicted by both of them. Besides, the proposition to remeasure the work, was under the existing circumstances so reasonable, that no fair and just man could have objected to it. But even if there was no agreement at the time of entering into the bond, yet, on general principles, as the bond was founded on the award, and as the award itself was liable to be set aside for misconduct of the arbitrators, and is in many respects contrary to justice, the bond itself ought to be no more respected than the award. I am for affirming the decree.
Tucker, P. concurring in this opinion, the decree was affirmed.